[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a dissolution of the parties' marriage on the ground of irretrievable breakdown by writ and complaint returnable to this court February 15, 1994. She also sought custody and support of their minor child, alimony and other relief as on file. The defendant husband filed an answer admitting the allegations of the complaint. In his cross complaint, he seeks a dissolution of the marriage on the ground of irretrievable breakdown, joint physical custody of the minor child and other relief, as on file.
Each party was represented by counsel at trial; each testified and submitted financial affidavits and child support worksheets. A number of other witnesses testified and numerous documents were introduced into evidence.
At the outset of trial, the parties agreed on an order of joint legal custody of the minor child, primary physical CT Page 607 custody with the wife, and specific rights of visitation to the husband substantially in accord with the written recommendation of a family services officer. (Defendant's Exhibit F.)
They also agreed that the husband would provide health insurance for the minor child through his place of employment and that the parties would equally split the uncovered and unreimbursed health expenses for the child.
The parties remained divided over child support, alimony, a property assignment and counsel fees.
From the evidence, I find as follows:
The plaintiff wife, whose birth name was Donna Duberg, married the defendant husband at Mystic, Connecticut, on October 23, 1988. She has resided continuously in this state for at least one year before the date of the complaint. Only one child was born to the wife, who is issue of the marriage: Ashley M. Perry, whose date of birth is July 28, 1990. Neither party nor the child is a recipient of public assistance. All statutory stays have expired, and the court has jurisdiction.
The wife is 32 years of age, a college graduate, in good health, and she takes some medication. She now works about 20 hours per week part-time as a barmaid in a restaurant. She reports $270[1] per week gross, including tips, $217 per week net. In the past, she has held jobs as a mortgage loan processor, loan representative and loan processor/underwriter for local banks and has earned salaries ranging from $18,000 to $23,500 per annum.
The husband is 40 years of age, in good health and has attained the 11th grade. He has variously worked as a laborer in the construction business in the past; for several years, he has been employed as a manager of a chain-owned donut shop. He earns $564 per week gross and $387 per week net.
The parties separated in the fall of 1993. The wife principally blames the husband for the destruction of their marriage, claiming he verbally abused her; `put her down'; and went out often. The husband basically claims that the parties pursued separate interests and life styles.
They didn't communicate and disagreed on many things. CT Page 608 They attempted counseling. The wife, after the separation, acquired a boyfriend. It is evident that their marriage has irretrievably broken down, and that each played a significant role in its destruction.
The parties have accumulated modest assets during their marriage. The husband reports a condominium unit in Groton worth $63,000, subject to two mortgages with an aggregate balance of $63,500, leaving no equity. I find the dwelling unit to be worth $68,500, leaving $5,000 equity. On his financial affidavit, he shows a 1991 Mitsubishi automobile with no equity over the loan balance; $12 in cash in banks; $3,500 in household furniture and furnishings; and $3,085 in an employment-related 401K plan. Against these assets, he reports $14,007 in debts, which include $2,045 in attorney's fees. Some of this indebtedness was incurred to pay mortgage payments and other carrying charges for the Groton condominium unit.
The wife reports a 1988 Hyundai automobile worth $1,250 and $2,200 in cash in banks. Against this, she shows $1,100 in liabilities.
The parties joined in purchasing a condominium unit in Westerly, Rhode Island, for $165,000, placed in the wife's name alone, due to the husband's poor credit rating. They ultimately lost the home through foreclosure. As a result, the wife was threatened with enforcement of a large deficiency judgment. She filed for bankruptcy and was discharged. This had the effect of relieving her from liability for family bills and a number of bills incurred by the husband under her credit cards.
They then purchased another condominium dwelling unit (the one presently owned by the husband) at 33 Crown Knoll Court, Groton, Connecticut, for about $65,000, with a mortgage of $51,900, and a cash down payment. The major portion of the down payment was contributed by the wife's mother, approximately $7,400. The parties disputed whether this was a gift or a loan; the court finds that the wife repaid her mother this amount in full, and it is not essential to determine the nature of the contribution in the context of this case.
The husband, threatened with litigation over a note he signed to obtain funds to improve the parties' financial position in the Westerly condominium (the one ultimately lost in foreclosure), was compelled to give his lender a second mortgage CT Page 609 on the Groton condominium unit to keep the lender at bay.
He now rents the Groton dwelling and claims a short fall of $31 per week between the rental income and expenses. Prior to this rental, he paid all of the expenses associated with the condominium unit after the wife moved out.
The parties submitted four child support guideline worksheets, each of which suggested different weekly amounts for child support. The husband claimed the wife understated her tip income and overstated her federal income tax deduction. I find this latter claim proven. Although the wife does have significant earning capacity in excess of her actual earnings, I do not find the husband's claim that she is substantially understating her tips persuasive.
The husband also claims a deviation from the guidelines because of the couple's shared custody arrangement. I find that the presumptive child support payable as suggested by the guidelines is $144 per week, which includes $51 per week for health insurance premiums paid by him on behalf of the child. I agree that when considering the totality of the circumstances, including the amount of time the husband spends with the child under their shared custody arrangement, the wife's earning capacity, the child's day care and pre-school expense paid by the wife, it would be inequitable or inappropriate to apply the guidelines mechanically. Hence, a modest downward deviation is proper. I find therefore that the husband's child support obligation should be $85 per week, plus the health insurance premium.
The parties have equal employability; the wife has greater occupational skills than the husband, and the parties' earning capacities are almost equal.
I have considered all of the criteria in General Statutes §§ 46b-62, 46b-81, 46b-82 and 46b-84 together with the taxable consequences of the financial awards set forth below.
Accordingly, judgment may enter as follows:
(1) A decree of dissolution on the ground of irretrievable breakdown of the marriage. CT Page 610
(2) Joint legal custody of the minor child, Ashley, is awarded to the parties; primary physical residence of the child shall be with mother. The father shall have visitation in accord with the terms and conditions stated in the family services officer's report. Each parent shall give to the other parent ninety (90) days written notice of any intention to move more than 50 miles from his or her present residence.
(3) The defendant shall pay to the wife the sum of $85 per week as child support, to be secured by contingent wage garnishment, in the event the garnishment is executed, payments shall be made directly to the obligee parent. The parents shall support the child pursuant to the provisions of 1994 Public Acts, No. 94-61.
(4) The parties shall participate in the Parenting Education Program, 1993 Public Acts, No. 93-319 within sixty (60) days hereof.
(5) The defendant shall maintain the child as a covered dependent on his job-related health insurance and pay the premium therefor. An order pursuant to General Statutes § 46b-84(c) shall enter. The parties shall each pay one-half of the unreimbursed or uncovered health expenses for the child, provided that if the plaintiff takes the child to non-approved health care providers in a non-emergency situation, she shall pay 65 percent of such unreimbursed expenses; the defendant the other 35 percent.
(6) The plaintiff shall be entitled to remain as a covered dependent under the defendant's job-related health insurance for the maximum statutory period under applicable law. The defendant will cooperate with this claim and pay the premium therefor for a period of eighteen (18) months from the date hereof. Said premium payments shall be actually in the nature of alimony as that term is used in 11 U.S.C. § 523(c)(5). I find that the plaintiff is in actual need of support and it is the intent that these payments not be affected by any discharge in bankruptcy, but shall terminate upon the death of either party, the wife's remarriage or pursuant to General Statutes § 46b-86(b). Said payments shall also be taxable to the wife and deductible by the husband and shall not be modifiable as to term. After the expiration of said eighteen (18) month period, continued coverage shall be at the wife's expense. CT Page 611
(7) The husband shall take and have: all right, title and interest in and to the real property known as No. 33 Crown Knoll Court, Groton, Connecticut (condominium unit) free of wife's claims, and all intangible and tangible personal property now in his possession, including his motor vehicle, except as set forth below.
(8) The wife shall take and have: all tangible and intangible personal property now in her possession, including her motor vehicle. There is also assigned to and vested in her the sum of $1,000 from husband's 401K plan by Qualified Domestic Relations Order (QDRO). The court retains jurisdiction over this matter until the assignment is accomplished. In addition, he shall turn over to her the following items: two patio chairs; her skis; the videotape of Ashley as a baby; and the $700 in savings bonds in her name and Ashley's.
(9) Each shall pay the liabilities shown on their respective financial affidavits and their respective attorney's fees.
(10) The wife's birth name of Duberg shall be restored.
(11) The husband shall irrevocably designate the minor child as beneficiary of his job-related life insurance policy with proceeds in the face amount of $15,000 until she reaches age 18. He shall execute and deliver an authorization to the wife so that she may from time to time determine the status thereof.
(12) The husband shall be entitled to the dependency exemption for the child for 1994 and succeeding years so long as he is current on the child support order at the end of any applicable tax year.
(13) All transfers ordered herein shall be completed within thirty (30) days hereof.
Teller, J.